IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ANDREW STEVEN WALKER                                                                    PLAINTIFF

v.                                        Civil No. 6:20-CV-06085-SOH-BAB

FORMER GUARD KEYSHAWN                                                                  DEFENDANTS
BLEDSOE, JANE DOE NURSE,[1]
JAUSHUA CROSBY, NURSE LONG and
DR. HENRY

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Currently before the Court are Motions for Summary Judgment by the Arkansas Division of Correction Defendants[2] (ECF No. 46) and the Medical Defendants (ECF No. 52).[3]  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

**I.  BACKGROUND**

Plaintiff filed his Complaint on August 14, 2020.  (ECF No. 1).  He alleges his federal constitutional rights were violated while he was incarcerated in the Arkansas Division of Correction ("ADC") Ouachita River Unit.  (*Id*.).  As his first claim, Plaintiff alleges that on July 3, 2019, Defendant Bledsoe failed to protect him from an attack by other inmates in 2 Barracks. Plaintiff alleges he was attacked with a padlock and an "ice pick shank."  (*Id*. at 4).  For the official capacity portion of this claim, Plaintiff alleges Defendant Bledsoe had a duty to act and keep him

---

[1] Defendant Jane Doe Nurse was not identified for service, and the deadline to do so has passed.
[2] Defendants Bledsoe and Crosby.
[3] Defendants Henry and Long.

1

safe, but did not do so, acted with reckless disregard, and subjected him to cruel and unusual punishment. (*Id*. at 5).

For his second claim, Plaintiff alleges that on July 3, 2019, Defendant Crosby failed to provide him with medical care after the attack, in violation of ADC policy and procedures.[4] (*Id*.). For the official capacity portion of this claim, he alleges that, as a shift supervisor, Defendant Crosby "went against his contract and everything he was supposed to do after I was attacked . . . from filing the incident report to providing me with medical care. No due process was provided." (*Id*. at 6).

For his third claim, Plaintiff alleges that Jane Doe Nurse provided him with inadequate medical care on July 3, 2019, when she examined him after the attack.[5] (*Id*. 6). He alleges she "only checked my vitals, she didn't check my head injury or the places where I was stabbed. . . ." (*Id*.). For his official capacity portion of this claim, Plaintiff alleges he should have been taken to the hospital. (*Id*. at 7). Plaintiff has not identified Jane Doe Nurse after the discovery process in this case, and the deadline to do so has passed. Thus, this claim will not be addressed.

For his fourth claim, Plaintiff alleges that on October 18, 2019, Nurse Long failed to provide him with adequate medical care after he notified her that he had been attacked in July. He alleges she ignored his head trauma from the attack, during which he was punched and "beat in the head with a padlock." (*Id*. at 8). He alleges that instead of providing appropriate treatment, she believed his head pain was caused by high blood pressure and adjusted his blood pressure medications. (*Id*.).

---

[4] It is well settled that prisoners do not have a constitutional right to enforce compliance with internal prison rules or regulations. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having ... prison officials follow prison regulations"); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("there is no § 1983 liability for violating prison policy"). Thus, any allegation by Plaintiff that a Defendant did not follow ADC rules or policies will not be addressed.
[5] By affidavit, Defendant Crosby indicated this exam was Plaintiff's pre-lockup assessment. (ECF No. 46-2 at 2).

For his fifth claim, Plaintiff alleges Dr. Henry and Dr. Young denied him adequate medical care after he notified them of the attack. (*Id*. at 9). He alleges Dr. Henry did not follow "all the policies and procedures" for him after Plaintiff informed him of his injuries. Dr. Young was terminated as a Defendant from this lawsuit on February 11, 2021. (ECF No. 22).

Plaintiff proceeds against all Defendants in their personal and official capacities. (*Id*. at 4, 5, 6, 8, 10). Plaintiff seeks compensatory and punitive damages. (*Id*. at 7).

The ADC Defendants filed their Motion for Summary Judgment on October 1, 2021. (ECF No. 46). On October 4, 2021, the Court entered an Order directing Plaintiff to file his Summary Judgment Response by October 25, 2021. (ECF No. 51). Plaintiff filed a Motion for Extension on October 25, 2021, which was granted on October 22, 2021. (ECF Nos. 60, 61). Plaintiff timely filed his Statement of Disputed Facts, an Affidavit, and a Declaration on November 5, 2021. (ECF Nos. 62, 63, 64).

The Medical Defendants filed their Motion for Summary Judgment on October 4, 2021. (ECF No. 52). On October 15, 2021, the Court entered an Order directing Plaintiff to file his Summary Judgment Response to this motion by November 5, 2021. (ECF No. 57). In both Orders directing a Response, Plaintiff was advised that "failure to timely and properly comply with this Order will result in: (a) all of the facts set forth by the Defendant in the summary judgment papers being deemed admitted by Plaintiff, pursuant to Local Rule 56.1(c);and/or (b) shall subject this case to dismissal, without prejudice, pursuant to Local Rule 5.5(c)(2)." (ECF Nos. 51, 57). Plaintiff failed to file a Summary Judgment Response. On November 9, 2021, the Medical Defendants filed a Notice of Statement of Facts Deemed Admitted, noting Plaintiff's failure to submit a Response to their motion, requesting that their facts be deemed admitted and their Motion

for Summary Judgment be granted on the merits. (ECF No. 65). Plaintiff did not file a Response to this Notice.

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.  ANALYSIS

### A.  Failure to Protect – Defendant Bledsoe

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. *Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998).

4

However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Instead, to prevail on his failure to protect claim, Plaintiff must satisfy a two-prong test. Plaintiff must demonstrate that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) prison officials were "deliberately indifferent [to Mayfield's] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted).

The first prong is an objective requirement to ensure the deprivation of a constitutional right is sufficiently serious. *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010). "The deprivation is objectively, sufficiently serious, under the first requirement when the official's failure to protect resulted in the inmate being incarcerated under conditions posing a substantial risk of serious harm." *Id*. (internal punctuation marks and citations omitted).

The second prong, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate's health or safety.'" *Holden*, 663 F.3d at 341 (quoting *Farmer,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007).

By their very nature, surprise attacks cannot meet the subjective second prong of the failure to protect test. *See Patterson v. Kelley*, 902 F.3d 845, 851-52 (8th Cir. 2018) (inmate's own inability to anticipate the surprise attack defeated any liability for prison staff). In his deposition, Plaintiff testified that when the fight broke out he was "surprised" and he "didn't see it coming." (ECF Nos. 47 at ¶ 12; ECF No. 46-1 at 14, 16). Defendant Crosby states in his affidavit that "none of the inmates involved in the altercation were on Walker's enemy alert list prior to July 3, 2019."

5

(ECF Nos. 47 at ¶ 21; 46-2 at 3). Crosby further stated, "ADC records do not indicate that Walker reported any issues with the inmates involved in the altercation prior to July 3, 2019." (ECF Nos. 47 at ¶ 21; 46-2 at 3). Plaintiff does not dispute his own testimony that he was surprised by the attack, that these inmates were not enemies prior to the incident, or that he had not reported any issues with these inmates prior to the incident. (ECF No. 62). Instead, Plaintiff argues that one of the inmates who attacked him did not belong in 2 Barracks and Bledsoe was aware of the inmate's unauthorized presence. (ECF No. 63 at 1-2). He does not allege, however, that he reported the presence of this inmate to any ADC staff as a threat to himself. Thus, the incident on July 3, 2019, was a surprise attack that cannot satisfy the second prong of the failure to protect test.

Plaintiff also argues that Defendant Bledsoe "set [sic] there and watched the altercation take place before the attack on Plaintiff and made no attempt to do anything but watch and walk away." (ECF No. 63 at 2). With this statement, Plaintiff appears to be arguing that Defendant Bledsoe deliberately ignored signs that a fight was brewing. Defendant Bledsoe stated in his affidavit that at approximately 1:00 p.m. on July 3, 2019, he was in the control booth performing a visual check when he noticed a fight in progress on the third tier of 2 Barracks. He called for all available officers, and when they arrived, the officers entered the barracks and the inmates involved in the fight separated themselves. (ECF No. 46-3 at 1-2). He also indicated that prior to the fight breaking out, inmates were standing around and having discussions throughout the barracks, which is not unusual, and not an indication that a fight is imminent. (*Id*. at 2).

The Court has carefully reviewed the two videos of the incident provided by Defendants, and they support Defendant Bledsoe's version of the incident. (ECF No. 46-4) The videos show an open area with tables and chairs in the center, and three floors or levels of cells with a walkway in front of the cells and stairs at each end. On the first video, which is just under 13 minutes in

length, inmates are walking in and out of the area, with no guards visible. A guard passed through briefly partway through the video. A group of inmates was seated at the tables on the first level. A group of inmates is standing on the third level where the fight ultimately occurs. Inmates come and go from this group on the third level. In the second video, the first evidence of a fight occurs at 1:01:53 p.m.. The first guard appears on camera view at 1:02:40 p.m., and the fighters disperse immediately. Thus, guards broke up the fight less than a minute after it started. Prior to the beginning of the fight, there is no indication that any violence is about to break out. The group of inmates on the third level is standing with inmates coming and going. There is no obvious aggressive body language. Several inmates sitting and talking on the first level directly below the group on the third level paid no attention to them until the fight started. None of the other inmates visible onscreen reacted as though a fight was imminent. Thus, Plaintiff's allegation that Defendant Bledsoe watched the fight and then walked away is contradicted by the record such that no jury could believe it.

There is no genuine dispute as to any material fact and Defendant Bledsoe is entitled to judgment as a matter of law for Plaintiff's failure to protect claim against him.

### B.  Denial of Medical Care

Plaintiff alleges that Defendant Crosby and the remaining Medical Defendants denied him adequate medical care after the incident on July 3, 2019. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the

condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Long*, 86 F.3d at 765).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany*, 132 F.3d at 1239). To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). This is an "onerous standard," *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013), requiring a prisoner to "clear a substantial evidentiary threshold." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).

Intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Dulany*, 132 F.3d at 1239.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir.

1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Neither Defendant Crosby nor the Medical Defendants argue that Plaintiff failed to meet the objective first prong of the test for any of his medical care claims. As discussed below, however, the summary judgment record shows no evidence that the subjective prong of the deliberate indifference standard was met. Instead, Plaintiff merely disagreed with his medical treatment after the attack.

### 1.  Denial of Medical Care - Defendant Crosby

In his Complaint, Plaintiff alleges very generally that Defendant Crosby failed to provide him with medical care after the attack. In his Statement of Disputed Facts, Plaintiff argues that he had shown Crosby the puncture wounds on his back from the ice pick, Crosby was in the infirmary when the nurse examined him immediately after the attack, and Crosby should have second-guessed the nurse's assessment of his injuries. (ECF No. 62 at 4-5.) Thus, Plaintiff's argument concerning Defendant Crosby and his medical care is that Crosby should have corrected the nurse when she determined that his wounds were superficial and did not penetrate past skin deep. (ECF No. 48 at 21).

The summary judgment record indicates Plaintiff was taken for a pre-lockup examination at 8:11 p.m. the day of the incident. (ECF No. 46-5). The medical notes indicate he arrived with his arms behind his back in wrist restraints, with "gait strong and steady per self with 2 ADC security at side." (*Id.*). The nurse indicated no signs of acute distress and "no problems noted." In the section of the form asking if any wounds, bruises, or abrasions were present, the nurse checked "None." (*Id.*). General appearance and behavior were indicated as normal. (*Id.*).

Nothing in the summary judgment record indicates that Defendant Crosby's actions met the subjective prong of the deliberate indifference test. Defendant Crosby is not a medical

10

professional and has no medical training. (ECF No. 48 at 21). Plaintiff does not allege that Defendant Crosby denied or delayed his access to the infirmary or otherwise interfered in any prescribed medical treatment. There is no evidence in the summary judgment record that Defendant Crosby ignored an acute or escalating medical situation. Instead, Plaintiff argues only that Defendant Crosby should have corrected the nurse's medical evaluation of Plaintiff. Further, Plaintiff does not allege that Defendant Crosby prevented him from speaking to the nurse and describing either what happened during the incident or his resulting injuries. As such, Plaintiff's allegations failed to meet the subjective prong of the deliberate indifference test.

There is no genuine dispute as to any material fact and Defendant Crosby is entitled to judgment as a matter of law for Plaintiff's denial of medical care against him.

### 2. Medical Defendants

#### a. Plaintiff's Failure to Comply with Local Rules and a Court Order

As the Medical Defendants correctly noted, Plaintiff failed to file any Summary Judgment Response to their Summary Judgment Motion, including a Statement of Disputed Facts. (ECF No. 65). Nor did he file any Objection or Response to their Notice asking the Court to deem their facts admitted and grant summary judgment in their favor.

Local Rule 56.1(a) requires any party moving for summary judgment to submit a separate statement of undisputed material facts. Local Rule 56.1(b) requires the non-moving party opposing the summary judgment motion to file a separate statement of disputed facts. *Pro se* inmates are advised of this requirement in the Order directing them to file a summary judgment response. *Pro se* inmates are also advised of this requirement in the District's Prisoner Litigation Guide, which contains an example to help them understand the concept of using the same paragraph numbering as that used by the moving party in their own statement of disputed facts.

Given that Plaintiff filed a Summary Judgment Response, including a Statement of Disputed Facts to the ADC Defendants Summary Judgment Motion, the Court can only infer that Plaintiff chose to ignore both the Local Rules and a Court Order when he failed to file any Response to the Medical Defendants' Motion.

Due to Plaintiff's failure, the Medical Defendants' Statements of Facts is deemed admitted pursuant to Local Rule 56.1(c). In determining whether there are genuine disputes of material fact, however, the Court has also considered the allegations set forth in Plaintiff's verified Amended Complaint. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See, e.g., Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001). "[A] complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint . . . ." *Id*. As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id*. The Court will, therefore, "piece[] together [Plaintiff's] version of the facts from the verified complaint . . . ." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016).

### b. Denial of Medical Care – Medical Defendants

In his Complaint, Plaintiff alleges that the Medical Defendants denied him adequate medical treatment. Specifically, he alleges that on October 18, 2019, Nurse Long improperly considered his head pain to be the result of hypertension and changed his hypertension medications. He further alleges Dr. Henry did not follow "all the policies and procedures" after he informed him that he had been stuck in the head with a padlock and stabbed. Plaintiff attached copies of grievances and several affidavits to his Complaint. (ECF No. 1-1). Plaintiff did not provide a date for the examination with Dr. Henry, but testified in his deposition that his only claim

against him was for an examination on August 13, 2019. (ECF No. 54-4 at 2). By affidavit, Plaintiff relates an examination discussion with Dr. Daniel on February 26, 2020. (ECF NO. 1-1 at 24). He states Dr. Daniel told him he might have suffered a slight concussion from the attack and "said something about P.T.S.D." (*Id*.). Dr. Daniel also promised to look into something for his head pain and see if he could arrange for Plaintiff to be seen by mental health providers. (*Id*.).

Medical records indicate Plaintiff was seen by Dr. Henry on August 12 and 13, 2019, and Nurse Long on October 17, 2019.[6] (ECF No. 54-1 at 1). Dr. Henry saw Plaintiff on August 12 for a Hypertension Chronic Care visit. (ECF No. 53 at 8). Plaintiff's blood pressure was 120/70, his pulse was 70, and plaintiff had no papilledema bilaterally. Pulse and blood pressure were in normal range. (ECF No. 54-1 at 7).

Dr. Henry saw Plaintiff the next day for a sick call related to the incident on July 3, 2019. (*Id*. at 8). Plaintiff complained of aching, localized pain over his left eyebrow; denied visual disturbances, hearing loss, and other neurological symptoms; and denied any loss of consciousness. Plaintiff referenced pain where he said he was stabbed in the shoulder with an ice pick. Plaintiff's blood pressure was 123/80 and his pulse was 70. (*Id*.). Dr. Henry noted a well-healed, non-tender scar over his left eyebrow, without fluctuance. He also noticed no evidence of stab wounds upon exam. Dr. Henry assessed Plaintiff as having had superficial wounds to the back of his shoulder and mild head trauma, but no definitive diagnosis and no need for any particular treatment. (ECF No. 53 at 9; ECF No. 54-1 at 8). He prescribed ibuprofen, for which Plaintiff already had an active prescription. (*Id*.).

The Medical Defendants provide an affidavit from Dr. Hughes, M.D., a physician licensed in the State of Arkansas, and contracted with the private company which provides healthcare

---

[6] Defendants note that this is the correct date of the encounter, based on the medical records.

services to the ADC. (ECF No. 54-3). Dr. Hughes notes that the lack of papilledema bilaterally on August 12 is:

> important because it means that there was nothing putting pressure in his eyes, so no symptoms of swelling or stroke or brain bleed. Further, his pulse and blood pressure were normal that day. If he had an increase in intracranial pressure, indicating a head injury, his blood pressure would have been elevated and bis pulse would have been low."

(*Id*. at 1). Dr. Hughes also stated that Plaintiff's vitals during the August 13 examination do not indicate an increase in intracranial pressure. Further, "[w]hile a supraorbital nerve could be considered immediately after the incident, I would not expect his headache to be from being hit in the head six weeks prior." (*Id*.). In his opinion, ibuprofen was sufficient to treat Plaintiff's subjective complaint of headache. (*Id*.).

Plaintiff was seen by Nurse Long on October 17, 2018. (ECF Nos. 53 at 9-10; 54-1 at 16-17) Plaintiff complained his temple and the top of his head hurt, and his stab wounds were hurting. (*Id*.). Nurse Long noted that his pulse and blood pressure was slightly elevated over the readings with Dr. Henry in August. (*Id*.). She also recorded that Plaintiff reported that hot showers and muscle rubs helped with his pain, including his headaches. (*Id*.). Nurse Long determined that he was no in acute distress based on his physical exam. (*Id*.). Nurse Long changed his blood pressure medication and prescribed a low sodium diet. She instructed him to drink plenty of water and prescribed Tylenol for his headaches. (*Id*.). She indicated she wanted to see him again in one week and follow up in chronic care. (ECF No. 54-1 at 17).

Dr. Hughes opines that it is "questionable whether Mr. Walker would have a posttraumatic headache over three months after he reported being hit in the head with a lock." (ECF No. 54-3 at 3). He believes that the fact that warm showers helped his headache pain indicate that Plaintiff headaches are likely muscular (external) in nature, and not attributable to brain (internal) injury.

14

(*Id*.). He also notes that Nurse Long switched Plaintiff from a blood pressure medication which has a known side effect of headache to one which does not. Dr. Hughes stated he would have likely left the blood pressure medication prescription alone and prescribed Tylenol for the headaches, but it was "a fine decision," and "there was certainly no harm caused. . . ." (*Id*. at 3-4).

Dr. Hughes further opined that Plaintiff received good and appropriate care from both Dr. Henry and Nurse Long. He states:

> Whatever superficial stab wounds he had initially had healed and required no care by Dr. Henry or Ms. Long. Further, Mr. Walker received ibuprofen, Tylenol, and blood pressure medication adjustments to try to resolve his subjective headache complaints. Their treatment of him was within the standard of care for treatment of a patient with his subjective and objective conditions. This conclusion is stated to a reasonable degree of medical certainty and is consistent with sound medical practices and my own professional judgment.

(*Id*. at 4).

Thus, the summary judgment record contradicts Plaintiff's claim that the medical Defendants denied him adequate medical care. He was seen after the incident for a pre-lockup examination. He was later seen for chronic care visits and at other times when he requested to be seen. A third-party physician has provided an affidavit confirming that the care was adequate. "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997). Based on this summary judgment record, the Court concludes the care Plaintiff received was constitutionally sufficient.

15

There is no genuine dispute as to any material fact and the Medical Defendants are entitled to judgment as a matter of law for Plaintiff's denial of medical care claim against them.

## IV. CONCLUSION

Accordingly, it is recommended that the Motions for Summary Judgment by the Arkansas Division of Correction Defendants (ECF No. 46) and the Medical Defendants. (ECF No. 52) be GRANTED and Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **1st day of August 2022**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE